UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
GUY ROBERT SODERLIND, JR., )
) No. C15-1655RSL
Plaintiff, )
v. ) ORDER DENYING
) PLAINTIFF'S MOTION FOR
URSULA J. HAIGH, *et al.*, ) SUMMARY JUDGMENT
)
Defendants. )
_____)

This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment." Dkt. # 68. Plaintiff seeks a summary determination that he was unlawfully arrested on July 16, 2013, that the officer defendants are not entitled to qualified immunity, and that SW 172nd Street in Burien, Washington, "including the beach is public property within the scope of the public trust doctrine." Dkt. # 68 at 18. Defendants oppose the motion.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] having heard the arguments of counsel, and taking the evidence in the light most favorable to defendants, the Court finds as follows:

---

[1] The Court has not considered Exhibit 2 to plaintiff's declaration (Dkt. # 88 at 12) because it is illegible and has not been authenticated.
  With regards to the excerpts of depositions submitted by plaintiff, "[a] deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. . . . Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 774 (9th Cir. 2002). Plaintiff's affidavit identifying the deponent and stating that the transcript is a "true and correct copy" lacks foundation even if plaintiff were at the deposition. Id. Shortly before the hearing of this matter, plaintiff remedied this evidentiary defect by providing the reporter's certification. The Court has, therefore, considered Exhibits 5, 6, 8, 15, and 16 to plaintiff's declaration.
  Exhibit 7 to plaintiff's declaration has not been properly authenticated and has not been considered.
  The Court has not considered the legal analysis or interpretations of recorded documents offered by attorney Richard R. Beresford. Dkt. # 70.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT           -2-

### A. Probable Cause

Plaintiff argues that his July 16, 2013, warrantless arrest violated the Fourth Amendment because it was without probable cause. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." Bailey v. U.S., 568 U.S. 186, 192 (2013). Conclusive evidence of guilt is not necessary, nor is mere suspicion or rumor sufficient. U.S. v. Lopez, 482 F.3d 1067 , 1072 (9th Cir. 2007). Rather, probable cause for a warrantless arrest exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." U.S. v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). "In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001).

Plaintiff was arrested pursuant to Washington's warrantless arrest statute which authorizes such arrests when the officer has probable cause to believe that an anti-harassment order has been issued, that the person is aware of the order, and that he or she has violated its terms. RCW 10.31.100(9). The question, then, is whether, given the totality of the circumstances, a prudent person in the officers' position would have concluded that there was a fair probability that plaintiff was aware that his neighbors had obtained an anti-harassment order against him and that he had violated the order.

On July 14, 2013, Detective Jon C. Holland received a call from one of plaintiff's neighbors, Christine Barton, who reported a violation of the anti-harassment order she had obtained against plaintiff to keep him off her property. Ms. Barton complained that plaintiff had walked on her property to access the water and a boat anchored offshore. She also reported a

history of negative interactions between the neighbors. Detective Holland looked up the anti-harassment order in the King County Sheriff's Office system, which showed that Ms. Barton was the petitioner, that plaintiff was the respondent, that plaintiff had been served with the order, and that the order was valid until December 15, 2013. The fields indicating the terms and conditions of the order showed that, although plaintiff was permitted access to the roadway in front of Ms. Barton's house (SW 172nd Street), he was prohibited from accessing Ms. Barton's property, including part of the tidelands.[2] Detective Holland requested a hard copy of the order.

Later that day, Detective Holland received an email from another neighbor, Ursula Haigh, with a video showing a person, identified as plaintiff, passing in front of her bulkhead allegedly in violation of another anti-harassment order with similar conditions to those obtained by Ms. Barton. Ms. Haigh reported that her husband also saw plaintiff on their property and that plaintiff had crossed Ms. Hart's and Ms. Barton's properties.

In the evening of July 14, Detective Holland received an email from Ms. Barton requesting assistance in dealing with dirt from plaintiff's property that was being dumped onto

---

[2] The anti-harassment orders obtained by Ms. Barton and Cynthia Hart restrained plaintiff from entering or being upon the following property:

> Lot ___, Seacoma Beach Division No. 1, according to the plat thereof recorded in Volume 15 of Plats, page 70, records of King County, Washington;
>
> Together with portion of Seacoma Boulevard abutting thereon, vacated by instrument recorded in Volume 30 of Commissioner's records, page 597;
>
> Together with tidelands of the second class extending to extreme low tide abutting thereon;
>
> Except such portion of said tidelands lying within Seacoma Boulevard (now Southwest 172nd Street).

Dkt. # 69 at 33-39. The order obtained by plaintiff Ursula Haigh describes the protected property primarily by reference to meets and bounds. Dkt. # 69 at 41-43.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT                -4-

her and another neighbor's property. She called the next morning, and Detective Holland requested specific information regarding how plaintiff had accessed her property the previous day. Just before noon on July 15, Detective Holland attempted to arrest plaintiff at his home, but he was not there. Detective Holland left two voicemail messages for plaintiff, but he did not return the calls. The Detective notified dispatch and patrol that there was probable cause to arrest plaintiff for violation of the anti-harassment orders obtained by Ms. Barton and Ms. Hart.[3] Deputies Erin M. Garske and Mike Mansanarez arrested plaintiff shortly thereafter: he was told that he was being arrested for violations of the anti-harassment orders and was not given an opportunity to explain or provide additional information.

Viewing the evidence in the light most favorable to defendants, there was probable cause for the arrest. The investigating officers had no reason to think the victims were unreliable, and there were corroborating witness statements and images regarding the alleged violations. The officers confirmed the existence, terms, and service of the anti-harassment orders at issue. The language of the anti-harassment orders seemed to support the neighbors' assertion that plaintiff was barred from their property with the exception of the portion lying within SW 172nd Street, and the officers confirmed that they were not complaining about plaintiff being on the roadway. In addition, they made efforts to contact plaintiff prior to his arrest before notifying dispatch and patrol that there was probable cause for the arrest. There is, at the very least, an issue of fact regarding whether the officers had sought out and obtained "knowledge [and] reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense" as defined in RCW 10.31.100(9) had been committed. Lopez, 482 F.3d at 1072.

---

[3] On July 15, 2013, Ms. Hart separately contacted the Burien Precinct to report that plaintiff had violated the anti-harassment order she had obtained against him. When Deputy Miller met with Ms. Hart, she produced a copy of the order and reported that plaintiff was on her beach and tidelands, not on SW 172nd Street. Deputy Miller confirmed the validity of the order with the King County Sheriff's Office data unit and unsuccessfully attempted to contact plaintiff.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT        -5-

Plaintiff argues that the investigating and/or arresting officers should have done more. In particular, he asserts that they should have (a) interviewed plaintiff, (b) inspected the 1907 plat for the development where the properties are located, and (c) interpreted the portion of the anti-harassment orders that barred plaintiff from his neighbors' properties "except such portion of said tidelands lying within Seacoma Boulevard (now Southwest 172nd Street)" broadly and in favor of plaintiff. At the moment the arrests were made, however, the facts and circumstances known to the officers appeared sufficient to provide probable cause. Facts which become known or appreciated after an arrest may ultimately dissipate probable cause or even prove the suspect's innocence, but they do not change the fact that probable cause for the arrest existed at the time. See Devenpeck v. Alford, 543 U.S. 146, 152 (1972); Lopez, 482 F.3d at 1075. There is no hard and fast requirement that a suspect be given an opportunity to explain himself, nor is the kind of records analysis plaintiff demands essential to a reasonable investigation or the sufficiency of known facts. In the circumstances presented here, the investigating officers had sufficient information to justify a reasonably prudent person to conclude that plaintiff had likely violated the anti-harassment orders and to inform dispatch and patrol of that determination.

Plaintiff also argues that, even if Detective Holland had probable cause to arrest plaintiff, the arresting officers were not entitled to rely on his determination and were required to conduct their own investigation before proceeding. The general rule is that, under the collective knowledge doctrine (otherwise known as the fellow officer rule), courts look to the collective knowledge of all the officers involved in the criminal investigation when determining whether probable cause exists for arrest. Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008); State v. Mance, 82 Wn. App. 539, 542 (1996). This rule applies to plaintiff's federal claims under Section 1983. With regards to the state law claims that are based on a lack of probable cause, plaintiff argues that State v. Ortega, 177 Wn.2d 116 (2013), abrogates the fellow officer rule if the crime at issue is a misdemeanor. Plaintiff's reading of Ortega is too broad. Mr.

Ortega was arrested for drug-traffic loitering, a gross misdemeanor, based on the observations of an officer at a remote location who radioed fellow officers and instructed them to arrest the suspect. The Washington Supreme Court noted that, "[u]nless a statutory exception applies, an officer may arrest a misdemeanor suspect without a warrant only if the officer was present when the misdemeanor was committed" and concluded that the fellow officer rule conflicts with the plain language of RCW 10.31.100. Id. at 120 and 127. Unlike the situation in Ortega, a statutory exception does, in fact, apply in this case. The statute specifically states that the requirement that the offense be committed in the presence of the arresting officer does not apply to arrests for violations of anti-harassment orders. RCW 10.31.100(9). Thus, this case is easily distinguished from Ortega. Given the clear statutory language and structure, where, as here, the statute does not require that the arresting officer observe the illegal conduct and/or make the probable cause determination, the fellow officer rule applies.[4]

**B. Warrantless Entry and Arrest**

"At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Silverman v. U.S., 365 U.S. 505, 511 (1961). Warrantless searches and seizures inside the home are presumptively unreasonable, and the presumption extends to areas outside the home which, like the inside of the house, "harbor[] the intimate activity associated with the sanctity of a man's home and the privacies of life." U.S. v. Dunn, 480 U.S. 294, 300 (1987) (internal quotation marks omitted). Plaintiff argues that the area of his driveway at the north end of his property near SW 171st Street falls within the zone of privacy and protection afforded by the Fourth Amendment. Defining the extent of this zone, traditionally known as the "curtilage," depends on four factors:

---

[4] Because plaintiff is not otherwise entitled to judgment on his probable cause claims, the Court need not determine whether RCW 10.31.100(15) provides immunity from the state and/or federal claims in the context of this motion.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -7-

"the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. at 301. The Supreme Court has noted that, "for most homes, the boundaries of the curtilage will be clearly marked: and the conception defining the curtilage - as the area around the home to which the activity of home life extends - is a familiar one easily understood from our daily experience." Oliver v. U.S., 466 U.S. 170, 182 n.12 (1984). A small, enclosed yard adjacent to the home where the family picnics and sits in the evening "is unquestionably such a clearly marked area to which the activity of home life extends, and so is curtilage subject to Fourth Amendment protection." U.S. v. Struckman, 602 F.3d 731, 739 (9th Cir. 2010) (internal quotation marks omitted).

The area where plaintiff was arrested does not fall within the curtilage of his home.[5] Plaintiff's home is oriented toward the water view to the south: all of the home-like activities one would usually do in the privacy of a backyard (such as grilling, entertaining, relaxing, etc.) would occur at that end of the property. He uses the part of the driveway adjoining SW 171st Street to store boats, cars, and equipment. Closer to the house are storage buildings which screen the remainder of the property from public view, but the area where he was arrested is exposed to the street and has none of the comforts, privacies, or uses of a home. The area where plaintiff was arrested is therefore not entitled to special protection under the Fourth Amendment.

**C. Qualified Immunity**

In the alternative, Detective Holland and Deputies Garske and Mansanarez are entitled to qualified immunity from suit. With regards to the warrantless entry and arrest, plaintiff was not, as a matter of law, arrested within the curtilage of his home. With regards to the probable cause

---

[5] The Court assumes, for purposes of this analysis, that plaintiff was arrested on his own property.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT           -8-

issue, even if the facts considered in the light most favorable to plaintiff could give rise to an inference that a constitutional violation occurred (an analysis that has not been performed in the context of this motion), the need to interrogate a suspect and/or perform an exhaustive record review prior to making a probable cause determination was not clearly established at the time of the arrest.

**D. Public Trust Doctrine**

Plaintiff's fourteenth cause of action seeks a declaration that "that portion of Seacoma Boulevard/SW 172nd St., as it passes the properties of Defendants Haigh, Barton and Hart, to be a public street open to Plaintiff . . . ." Dkt. # 57 at ¶ 16.4. Although plaintiff refers to this cause of action in his motion, he makes no argument regarding SW 172nd Street or his right of access thereto. Rather, plaintiff apparently seeks a declaration that the public trust doctrine gives him the right to cross over the beach in front of his neighbors' houses in order to access the waters of Puget Sound and that he has a right to traverse navigable water over submerged tidelands, even if privately held. Dkt. # 68 at 18. This issue was not the subject of a claim for declaratory relief in plaintiff's Third Amended Complaint and is not properly before the Court.

To the extent plaintiff is implicitly arguing that the 80 foot wide public right-of-way easement across his neighbors' property reaches into the submerged tidelands so that he had a right to traverse the beach from the roadway into the water, he has not shown that he is entitled to judgment. The right-of-way parallels the beach and includes, but is not limited to, the two paved lanes of SW 172nd Street. Dkt. # 50.[6] The precise location of that right-of-way is not clear from the existing record. Plaintiff offers no surveys or other admissible evidence regarding the north or south boundaries of the public easement, and the Court cannot determine whether there

---

[6] In her opposition memorandum, Ms. Barton argues that the right-of-way easement is narrower than 80 feet and does not extend to defendant Haigh's property. These arguments were either raised and rejected in the context of the City of Burien's motion for a summary determination that SW 172nd Street is an 80-foot wide public right of way or were waived.

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT         -9-

is a portion of the beach that lies below the public right-of-way and above the navigable waters of the state. Nor has plaintiff shown that he, or the public in general, has a right to use portions of the easement which burden defendants' properties but have not been improved or otherwise utilized as a public street or thoroughfare. Plaintiff is not, therefore, entitled to a declaration that he may access the waters of Puget Sound from the beach in front of defendants' houses. Even if plaintiff has a right, in keeping with the rest of the public, to use the navigable waters of the state, that right does not provide ancillary rights of access across private land to reach those navigable waters. Kemp v. Putnam, 47 Wn.2d 530, 537 (1955), overruled on other grounds by Save a Valuable Env't v. City of Bothell, 89 Wn.2d 862 (1978). See also State v. Longshore, 141 Wn.2d 414, 428-29 (2000) (holding that the public trust doctrine applies to lands when actually covered by the navigable waters of the state and provides no right to gather shellfish on privately-held tidelands when the waters have subsided).

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 68) is DENIED.

Dated this 11th day of May, 2018.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge