UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
GUY ROBERT SODERLIND, JR., )
 ) No. C15-1655RSL
               Plaintiff, )
    v. ) ORDER GRANTING THE KING
 ) COUNTY DEFENDANTS' MOTION
URSULA J. HAIGH, *et al.*, ) FOR SUMMARY JUDGMENT
 )
               Defendants. )
_____)

This matter comes before the Court on "King County Defendants' Motion for Summary Judgment." Dkt. # 71. On July 16, 2013, plaintiff Guy Soderlind was arrested for violating anti-harassment orders his neighbors had obtained against him.[1] Plaintiff asserts claims of conspiracy to violate his First, Fourth, and Fourteenth Amendment rights, false arrest, false imprisonment, malicious prosecution, violation of civil rights under 42 U.S.C. § 1983, and intentional and negligent infliction of emotional distress against the investigating officer, Detective Jon C. Holland, the arresting officers, Deputies Erin M. Garske and Mike Mansanarez, and their

---

[1] Plaintiff also makes allegations regarding post-arrest events, such as the handling of his cell phone, the length of time he was in the patrol car and how the heat impacted him, an interaction with Detective Jon C. Holland, the speed at which Deputy Erin M. Garske drove the patrol car, and the seizure of the boat he had moored in front of the neighbors' property. Only the last event is referenced in his opposition memorandum, however: the rest do not appear to form the basis for any of the claims asserted.

ORDER GRANTING THE KING
COUNTY DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

employer, King County (collectively, "the King County defendants"). The King County defendants seek dismissal of all claims against them.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[2]

---

[2] The Court has not considered attorney John Kannin's unsupported and speculative assertions regarding the impact that arguments regarding ownership and rights-of-way had on the resolution of the criminal charges brought against plaintiff in 2013 or the nature of the negotiated resolution. Dkt. # 92 at ¶ 5.

ORDER GRANTING THE KING
COUNTY DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT     -2-

having heard the arguments of counsel, and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

**A. Conspiracy to Violate Plaintiff's Civil Rights - Claim 1**

In order to establish a conspiracy claim under 42 U.S.C. § 1983, plaintiff has the burden of showing (1) the existence of an express or implied agreement among the defendants to violate plaintiff's constitutional rights and (2) an actual violation arising from that agreement. See Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010). There is no evidence from which a reasonable jury could conclude that there was a meeting of the minds or other agreement to violate plaintiff's constitutional rights. The investigating officers (only one of whom is a defendant in this litigation) independently received citizen complaints which they then investigated. There is no indication that the investigating officers had ever discussed or considered plaintiff prior to the events of July 14-16, 2013. The fact that an officer responds to and investigates a citizen's complaint is not evidence of a conspiracy to violate the suspect's constitutional rights. As discussed more fully below, the investigations performed by the officers were reasonably thorough and gave rise to probable cause to believe that plaintiff had violated the anti-harassment orders, a determination on which the arresting officers relied. The circumstances of this case do not give rise to the slightest inference of an illicit agreement between the complaining property owners and the officers or among the officers themselves.

---

The Court has not considered the speculative expert testimony that King County fails to train officers regarding investigations and/or the use of warrants for misdemeanor arrests or has a policy, practice, or custom not to use warrants for misdemeanor arrests. Dkt. # 93 at ¶ 4.

The Court has not considered statements in plaintiff's declaration for which he has no personal knowledge. Dkt. # 94 at ¶ 6.

The Court has not considered Deputy Mansanarez' statements regarding the location of the arrest.

The Court has not considered the King County Assessor's Office printouts for the purpose of establishing the precise boundaries of plaintiff's parcel, but rather for the general location and contents of the parcel.

Plaintiff's first claim against the King County defendants fails as a matter of law.

**B. False Arrest in Violation of 42 U.S.C. § 1983 - Claim 2**

Plaintiff argues that his July 16, 2013, warrantless arrest for violation of the anti-harassment orders obtained by his neighbors violated the Fourth Amendment because it was without probable cause. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." Bailey v. U.S., 568 U.S. 186, 192 (2013). Conclusive evidence of guilt is not necessary, nor is mere suspicion or rumor sufficient. U.S. v. Lopez, 482 F.3d 1067 , 1072 (9th Cir. 2007). Rather, probable cause for a warrantless arrest exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." U.S. v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). "In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001).

Plaintiff was arrested pursuant to Washington's warrantless arrest statute which authorizes such arrests when the officer has probable cause to believe that an anti-harassment order has been issued, that the person is aware of the order, and that he or she has violated its terms. RCW 10.31.100(9). The question, then, is whether, given the totality of the circumstances, a prudent person in the officers' position would have concluded that there was a fair probability (1) that plaintiff was aware that his neighbors had obtained an anti-harassment order against him and (2) that he had violated the order.

On July 14, 2013, Detective Holland received a call from one of plaintiff's neighbors, Christine Barton, who reported a violation of the anti-harassment order she had obtained against

plaintiff to keep him off her property. Ms. Barton complained that plaintiff had walked on her property to access a boat moored offshore. She also reported a history of negative interactions between the neighbors. Detective Holland looked up the anti-harassment order in the King County Sheriff's Office system, which showed that Ms. Barton was the petitioner, that plaintiff was the respondent, that plaintiff had been served with the order, and that the order was valid until December 15, 2013. The fields indicating the terms and conditions of the order showed that, although plaintiff was permitted access to the roadway in front of Ms. Barton's house (SW 172nd Street), he was prohibited from accessing Ms. Barton's property, including part of the tidelands.[3] Detective Holland requested a hard copy of the order.

Later that day, Detective Holland received an email from another neighbor, Ms. Haigh, with a video showing a person, identified as plaintiff, passing in front of her bulkhead allegedly in violation of another anti-harassment order with similar conditions to the order obtained by Ms. Barton. Ms. Haigh reported that her husband also saw plaintiff on their property and that plaintiff had crossed Ms. Hart's and Ms. Barton's properties.

---

[3] The anti-harassment orders obtained by Ms. Barton and Cynthia Hart restrained plaintiff from entering or being upon the following property:

> Lot ___, Seacoma Beach Division No. 1, according to the plat thereof recorded in Volume 15 of Plats, page 70, records of King County, Washington;
>
> Together with portion of Seacoma Boulevard abutting thereon, vacated by instrument recorded in Volume 30 of Commissioner's records, page 597;
>
> Together with tidelands of the second class extending to extreme low tide abutting thereon;
>
> Except such portion of said tidelands lying within Seacoma Boulevard (now Southwest 172nd Street).

Dkt. # 69 at 33-39. The order obtained by plaintiff Ursula Haigh describes the protected property primarily by reference to meets and bounds. Dkt. # 69 at 41-43.

ORDER GRANTING THE KING
COUNTY DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT              -5-

In the evening of July 14, Detective Holland received an email from Ms. Barton requesting assistance in dealing with dirt from plaintiff's property that was being dumped onto her and another neighbor's property. When she called the next morning, Detective Holland requested specific information regarding how plaintiff had accessed her property the previous day. Just before noon on July 15, Detective Holland attempted to arrest plaintiff at his home, but he was not there. The Detective notified dispatch and patrol that there was probable cause to arrest plaintiff for violation of the anti-harassment orders obtained by Ms. Barton and Ms. Hart.[4] Deputies Garske and Mansanarez arrested plaintiff shortly thereafter. They informed plaintiff that he was being arrested for violations of the anti-harassment orders: he was not given an opportunity to explain or provide additional information prior to his arrest.

Viewing the evidence in the light most favorable to plaintiff, there was probable cause for the arrest. The investigating officers had no reason to think the victims were unreliable, their statements corroborated each other, and there were supporting images of the alleged violations. The officers confirmed the existence, terms, and service of the anti-harassment orders at issue. The language of the anti-harassment orders seemed to support the neighbors' assertion that plaintiff was barred from their property with the exception of the portion lying within SW 172nd Street, and the officers confirmed that the property owners were not complaining about plaintiff being on the roadway. The Court finds, as a matter of law, that the investigating officers sought out and obtained "knowledge [and] reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense" as defined in RCW 10.31.100(9) had been committed. Lopez, 482 F.3d at 1072.

---

[4] On July 15, 2013, Ms. Hart separately contacted the Burien Precinct to report that plaintiff had violated the anti-harassment order she had obtained against him. When Deputy Miller met with Ms. Hart, she produced a copy of the order and reported that plaintiff was on her beach and tidelands, not on SW 172nd Street. Deputy Miller confirmed the validity of the order with the King County Sheriff's Office data unit.

ORDER GRANTING THE KING
COUNTY DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT            -6-

Plaintiff argues that the investigating and/or arresting officers should have done more. In particular, he asserts that they should have (a) interviewed plaintiff, (b) inspected the 1907 plat for the development in which the properties are located, and (c) interpreted the portion of the anti-harassment orders that referenced the "tidelands lying within Seacoma Boulevard (now Southwest 172nd Street)" broadly and in his favor. At the moment the arrests were made, however, the facts and circumstances known to the officers appeared sufficient to provide probable cause. Facts which become known or appreciated after an arrest may ultimately dissipate probable cause or even prove the suspect's innocence, but they do not change the fact that probable cause for the arrest existed at the time. See Devenpeck v. Alford, 543 U.S. 146, 152 (1972); Lopez, 482 F.3d at 1075. There is no hard and fast requirement that a suspect be given an opportunity to explain himself, nor is the kind of records review plaintiff demands essential to a reasonable investigation or the sufficiency of known facts. The language of the underlying anti-harassment orders seems to support, not contradict, the neighbors' demands for protection and their claims of violation. In the circumstances presented here, the investigating officers had sufficient information to justify a reasonably prudent person to conclude that plaintiff had likely violated the anti-harassment orders and to inform dispatch and patrol of that determination.

Plaintiff also argues that, even if Detective Holland had probable cause to arrest plaintiff, the arresting officers were not entitled to rely on his determination and were required to conduct their own investigation before proceeding. The general rule is that, under the collective knowledge doctrine (otherwise known as the fellow officer rule), courts look to the collective knowledge of all the officers involved in the criminal investigation when determining whether probable cause exists for arrest. Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008); State v. Mance, 82 Wn. App. 539, 542 (1996). This rule applies to plaintiff's federal

claims under Section 1983.[5]

Plaintiff's second claim against the King County defendants fails as a matter of law.[6]

**C. False Imprisonment in Violation of 42 U.S.C. § 1983 - Claim 3**

Given that there was probable cause to arrest plaintiff on July 16, 2013, plaintiff was not unlawfully imprisoned.

**D. Malicious Prosecution in Violation of 42 U.S.C. § 1983 - Claim 4**

In order to succeed on a Section 1983 claim of malicious prosecution, plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (alterations in the original, citation omitted). As discussed above, the officers had probable cause to believe that plaintiff had violated the anti-harassment orders when they arrested him. In addition, there is no evidence

---

[5] With regards to the state law claims that are based on a lack of probable cause, plaintiff argues that State v. Ortega, 177 Wn.2d 116 (2013), abrogates the fellow officer rule if the crime at issue is a misdemeanor. Plaintiff's reading of Ortega is too broad. Mr. Ortega was arrested for drug-traffic loitering, a gross misdemeanor, based on the observations of an officer at a remote location who radioed fellow officers and instructed them to arrest the suspect. The Washington Supreme Court noted that, "[u]nless a statutory exception applies, an officer may arrest a misdemeanor suspect without a warrant only if the officer was present when the misdemeanor was committed" and concluded that the fellow officer rule conflicts with the plain language of RCW 10.31.100. Id. at 120 and 127. Unlike the situation in Ortega, a statutory exception does, in fact, apply in this case. The statute specifically states that the requirement that the offense be committed in the presence of the arresting officer does not apply to arrests for violations of anti-harassment orders. RCW 10.31.100(9). Thus, this case is easily distinguished from Ortega. Given the clear statutory language and structure, where, as here, the statute does not require that the arresting officer observe the illegal conduct and/or make the probable cause determination, the fellow officer rule applies.

[6] The Court has already found in the context of plaintiff's motion for summary judgment that he was not arrested in his home or the curtilage thereof and that the investigating and arresting officers are entitled to qualified immunity with regards to the Section 1983 claims arising from an alleged lack of probable cause.

ORDER GRANTING THE KING
COUNTY DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT            -8-

of malice or an intent to deprive plaintiff of his constitutional rights. The prosecuting attorney of the City of Burien evidently believed that the evidence compiled by the officers justified the filing of charges against plaintiff. Plaintiff argues that the charges were subsequently dismissed because everyone knew that they had been maliciously filed, but the evidence shows only that the City and plaintiff entered into a stipulated resolution of the charges shortly after plaintiff made the argument that the beach on which he was walking was public property excepted from the scope of the anti-harassment orders. Whether the City thought plaintiff's right-of-way argument constituted a defense is unknown. Even if the City were persuaded, the evidence suggests only that defendants reacted appropriately to the information they had at various points in the proceeding, not that they acted with malice or ill intent in prosecuting plaintiff. Plaintiff's fourth claim fails as a matter of law.

**E. Deprivation of Constitutional Rights in Violation of 42 U.S.C. § 1983 - Claim 5**

For the reasons discussed above, plaintiff's Section 1983 claims based on a lack of probable cause and/or the warrantless arrest cannot proceed. Plaintiff also alleges that his First Amendment right of assembly and his Fourteenth Amendment right to due process have been violated.

Assuming, for purposes of the First Amendment claim, that plaintiff "assembled" on property that was burdened by a public right-of-way, he has not provided any evidence from which a reasonable jury could conclude that the officers acted with an intent to deter or chill the exercise of his First Amendment rights. Mendocino Envt'l Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (1999). Despite the broad protection afforded to assemblies in public streets and parks, some restrictions on those activities are valid. The state may, consistent with the First Amendment, impose reasonable regulations governing the time, place, or manner of the assembly. See Berger v. City of Seattle, 569 F.3d 1029, 1036 (9th Cir. 2009). In this case, defendants had seemingly valid anti-harassment orders from King County Superior Court which

the officers were called upon to enforce. The orders excluded plaintiff from his neighbors' property, including the tidelands in front of their houses, but preserved his right of ingress and egress over the roadway now known as SW 172nd Street. Plaintiff believes that the officers misinterpreted the order when they deemed him in violation for being in front of defendants' houses but off the road. It was entirely reasonable to interpret the orders that way, however,[7] and no inference of an intent to chill First Amendment activities arises from the officers' reasonable conclusion that plaintiff had violated the time, place, and manner restrictions imposed by the King County Superior Court.

Plaintiff's due process claim is based on the seizure of his boat without notice or an opportunity to be heard. The fact that plaintiff did not own the boat does not preclude a due process claim as long as he had a significant property interest in the vessel. Fuentes v. Shevin, 407 U.S. 67, 86 (1972) (holding that deprivation of a protectable interest in goods, such as "the interest in continued possession and use of the goods," may form the basis of a due process claim). The Court will therefore assume that plaintiff was deprived of a protectable property interest without notice and an opportunity to be heard. Nevertheless, his due process claim fails as a matter of law. The evidence shows that the seizure was triggered by a complaint made on July 22, 2013, regarding an improperly moored boat. The investigating officer, who is not a defendant in this case, obtained the registration number of the vessel and identified the owner. The owner requested that the boat be delivered to his residence rather than impounded or released to plaintiff. There is no indication that the officer was aware that plaintiff had a right to continued possession or any other protectable interest in the vessel. A negligent deprivation of

---

[7] After a full discussion of the purpose and scope of the exclusionary order during the state court hearing, plaintiff's counsel summarized its effects as follows: "Is he on the road or off the road? So if he's in front of their house, he should be on the road . If he goes off the road, then he's in violation." Dkt. # 86-9 at 20.

property does not violate the Due Process Clause of the Fourteenth Amendment where the state provides a meaningful postdeprivation remedy. Hudson v. Palmer, 468 U.S. 517 531 (1984).[8] If, as plaintiff now suggests, he had some sort of purchase contract, lease/buy arrangement, or right to continued possession through an arrangement with the owner, his remedy would lie in enforcing those agreements, not under Section 1983.

**F. Defamation - Claim 6**

Plaintiff has not responded to defendants' motion for summary dismissal of his defamation claim or otherwise shown a triable issue of fact regarding this claim.

**G. Intentional Infliction of Emotional Distress - Claim 7**

To establish the tort of intentional infliction of emotional distress (otherwise known as outrage), "a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff." Reid v. Pierce Cty., 136 Wn.2d 195, 202 (1998). Defendants argue that a lawful arrest for violation of multiple anti-harassment orders is not extreme or outrageous conduct. Plaintiff makes no response, stating only that, regardless of the viability of his outrage claim, he is entitled to recover damage for emotional distress under Section 1983. The conduct of which plaintiff complains does not satisfy the elements of an outrage claim.

**H. Negligent Infliction of Emotional Distress - Claim 8**

Plaintiff makes no response to defendants' arguments regarding the viability of his negligent infliction of emotional distress claim and simply relies on the availability of emotional distress damages under Section 1983. Plaintiff has not presented evidence of his emotional response or the corroborating objective symptomology. Hegel v. McMahon, 136 Wn.2d 122,

---

[8] Washington provides a state tort claim procedure against local governmental entities and their agents in RCW Chapter 4.96.

ORDER GRANTING THE KING
COUNTY DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                -11-

132 (1998).

**I. Conspiracy Under State Law - Claim 9**

In order to establish a conspiracy under the common law of Washington, plaintiff "must prove by clear, cogent, and convincing evidence that 1) two or more people combined to accomplish an unlawful purpose, or combined to establish a lawful purpose by unlawful means; and 2) the conspirators entered into agreement to accomplish the conspiracy." Hunter v. Ferebauer, 980 F. Supp.2d 1251, 1261 (E.D. Wash. 2013). As discussed in the context of plaintiff's first claim, there is no evidence from which a reasonable jury could conclude that there was a meeting of the minds or other combination to achieve an unlawful purpose or to use unlawful means. This claim also fails as a matter of law.

**J. False Arrest and False Imprisonment Under State Law - Claims 10 and 11**

Under Washington law, the existence of probable cause is a complete defense to claims of false arrest and false imprisonment. Cassette v. King Cty., 625 F. Supp.2d 1084, 1090 (W.D. Wash. 2008).[9]

//

//

//

---

[9] Plaintiff's twelfth claim of malicious prosecution under state law is asserted only against defendants Haigh, Barton, and Hart. Dkt. # 57 at 23. To the extent plaintiff intends to assert this claim against the King County defendants, "probable cause is a complete defense to a malicious prosecution action . . ." Hanson v. City of Snohomish, 121 Wn.2d 552, 560 (1993).

ORDER GRANTING THE KING
COUNTY DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT -12-

For all of the foregoing reasons, the motion for summary judgment filed by the King County defendants (Dkt. # 71) is GRANTED. The claims asserted against defendants King County, Jon C. Holland, Erin M. Garske, and Mike Mansanarez are hereby DISMISSED with prejudice.

Dated this 11th day of May, 2018.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge